**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| LivWell Health LLC,<br>Plaintiff,<br>v.<br>Southern California Eye Physicians & Surgeons, et al.,<br>Defendants. | No. CV-25-01119-PHX-SMB<br>**ORDER** |

Defendant and Counterclaimant Southern California Eye Physicians & Surgeons ("Defendant SCEPS") along with Defendants Alice Song, Michael Song and Julia Song ("Song Defendants") filed a Motion to Dismiss Plaintiff/Counterdefendant LivWell Health, LLC d/b/a LivWell Infusions' ("LivWell" or "Plaintiff") Third Amended Complaint ("TAC"). (Doc. 83.) Those same Defendants filed a Motion to Strike Counterdefendants' Untimely Answer to Counterclaims. (Doc. 86.) Defendant Center for Oculofacial & Orbital Surgery, Inc. ("Defendant COOS") and Defendant Alice Song, M.D., P.C. ("Defendant ASMD") also filed a Motion to Dismiss Plaintiff's Third Amended Complaint. (Doc. 84.) The Court will consider these motions together. For the reasons given, the Court **denies** the Motion to Strike and **grants in part** the Motions to Dismiss, as noted below, with leave to amend.

## I. BACKGROUND

Plaintiff's TAC alleges that Defendant SCEPS had patients who needed infusion treatment. (Doc. 78 at 3, ¶ 15.) Plaintiff administers those services. (Doc. 78 at 3, ¶ 16.)

Plaintiff and Defendant SCEPS entered into a Management Services Agreement ("MSA") around October 20, 2023. (Doc. 78 at 3, ¶ 18.) Under this agreement, Plaintiff was to provide Defendant SCEPS with administrative services such as ordering infusion medications, paying for those medications, and billing and collecting payment from third-party vendors for the infusion treatments. (Doc. 78 at 3, ¶ 20.)

Because of difficulties with regular monetary transfers, Plaintiff terminated the MSA in November 2024. (Doc. 78 at 5, ¶¶ 37-38.) Plaintiff then demanded the return of its property from the Defendants which it has not received. (Doc. 78 at 5, ¶¶ 40-41.) One or more of the Defendants instituted reversals of payments to Plaintiff, through an entity named Intuit, totaling over $700,000 which Plaintiff was able to stop. (Doc. 78 at 6, ¶¶ 46-52.) Because of Intuit's improper credit to Defendant SCEPS, the improper debit to Plaintiff, and Plaintiff's successful prevention of the funds transfer, Intuit has started a collections action against Plaintiff. (Doc. 78 at 6, ¶ 54.) Defendants COOS and ASMD are owned, managed or controlled by the Song Defendants, and are continuations of SCEPS. (Doc. 78 at 11, ¶¶ 100-101, 105.) The TAC alleged nine separate claims for relief: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) fraudulent transfer; (4) fraud; (5) conversion of equipment; (6) conversion of reversed payments; (7) unjust enrichment; (8) civil conspiracy; and (9) aiding and abetting.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

"To satisfy Rule 9(b), a claim of fraud must state with particularity the circumstances constituting fraud. Particularity under Rule 9(b) requires the plaintiff to plead the who, what, when, where, and how of the misconduct alleged." *Fialkov v. Microsoft Corp.*, 72 F.Supp.3d 1220, 1228 (W.D. Wash. 2014) (citation modified). Falsity and scienter must both be plead with particularity and must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the

complaint shall state with particularity all facts on which that belief is formed." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005).

## III. DISCUSSION

### A. Timing of the Rule 12(b)(6) Motion from Defendant SCEPS and the Song Defendants

Plaintiff argues that the motion to dismiss filed by Defendant SCEPS and the Song Defendants should be dismissed because it was filed after a responsive pleading was made to an earlier version of the Complaint. "A motion asserting [failure to state a claim upon which relief can be granted] must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). The required consolidation of defenses under Rule 12(g) is designed to prevent "piecemeal consideration of a case." *Id.* at Note after 1966 Amendment, Subdivision g.

Rule 12(h)(2) states that "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . in any pleading allowed or ordered under Rule 7(a) [or] by a motion under Rule 12(c)." *In re Mendenhall*, 654 B.R. 798, 804 (W.D. Wash. 2023). "Scant caselaw in the Ninth Circuit exists to answer whether an amended complaint allows a defendant to file a motion to dismiss after they have filed an answer or responsive pleading to the original complaint." *Id.*

"If a failure-to-state-a-claim defense under Rule 12(b)(6) was not asserted in the first motion to dismiss under Rule 12, Rule 12(h)(2) tells us that it can be raised, but only in a pleading under Rule 7, in a post-answer motion under Rule 12(c), or at trial." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017). However, "[d]enying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1." *Id.* "[S]uccessive Rule 12(b)(6) motions may be considered where they have not been filed for the purpose of delay, where entertaining the motion would expedite the case, and where the motion would narrow the issues involved." *Id.* at 319 (citation modified). Because the Court does not consider the late-filed motion by

Defendant SCEPS and the Song Defendants to have been "filed for any strategically abusive purpose," *id.* at 320, the Court will consider that motion to dismiss together with the one filed by Defendants COOS and ASMD.

**B. Motion to Strike Answer to Counterclaims**

Defendant SCEPS and the Song Defendants filed a Motion to Strike Plaintiff's Answer to their counterclaims. (Doc. 86.) This motion "is in substance a request for default under Rule 55 of the Federal Rules of Civil Procedure. Rule 12(f), which governs motions to strike, does not provide a remedy to strike a late-filed answer." *Crawford v. Unknown Party*, No. CV-22-00154-TUC-JCH, 2023 WL 2522216 at *7 (D. Ariz. Mar. 1, 2023).

Even if there had been a default here, the Court would consider if good cause existed to set aside any default by looking at three factors: "(1) whether [the party] engaged in culpable conduct that led to the default; (2) whether [the defaulting party] had a meritorious defense; or (3) whether reopening the default judgment would prejudice [the non-defaulting party]." *Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004).

The Court sees no culpable conduct here by Plaintiff mistakenly overlooking a deadline. While the answer is very late, once Plaintiff was notified of the oversight, an Answer was filed the same day. (Doc. 81.) Plaintiff identified sixteen affirmative defenses to the Defendants' counterclaims. (Doc. 81 at 6-10.) The Court has no reason to believe that those defenses are not meritorious at this time. The parties have been actively participating in discovery. Defendant SCEPS and the Song Defendants claim that they have been prejudiced by this delay. (Doc. 90 at 2-3.) However, they do not identify any specific discovery that cannot take place under the current deadlines. The Court has not yet ruled on the Defendants' Motion to Stay Case Management Deadlines. (Doc. 92.) Therefore, the Court finds no prejudice here. The motion to strike is denied.

**C. Personal Jurisdiction of Defendants COOS and ASMD and Alter Ego Liability**

Defendants COOS and ASMD seek dismissal from this case based on lack of personal jurisdiction. (Doc. 84.) The claims against these two Defendants are Counts 1-4 and 6-9. (Doc. 78.) Plaintiff's claims are based on its relationship with Defendant SCEPS, the Song Defendants and the MSA. (Doc. 84 at 2.) Defendants COOS and ASMD are California corporations. (Doc. 78 at 2, ¶¶ 7, 8.) Plaintiff argues that Defendants COOS and ASMD are alter egos of Defendant SCEPS and were controlled and managed by the Song Defendants. (Doc. 78 at 10, ¶¶ 91-92.)

Personal jurisdiction may be attributed to a different corporate entity if it is an alter ego of an entity over whom personal jurisdiction exists. Plaintiff points to this theory to impute the actions of Defendant SCEPS and the Song Defendants to Defendants COOS and ASMD. "[T]he alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citation modified). A prima facie case of alter ego requires: "(1) that there is such unity of interest and ownership that the separate personalities . . . no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (citation modified).

Plaintiff claims specifically that "more than $700,000 previously paid to LivWell was wrongfully reversed and diverted; that monies owed to LivWell were transferred into accounts owned or controlled by one or more of the Song Defendants, including COOS and ASMD; that SCEPS funds were intermingled with funds belonging to COOS and ASMD; and that those entities were used to conceal assets and hinder LivWell's recovery." (Doc. 88 at 2-3, citing TAC (Doc. 78 at 6-8, 10-11, ¶¶ 46-67, 88-99)).

Plaintiff further claims that Defendants COOS and ASMD are successors of Defendant SCEPS. (Doc. 78 at 11-12, ¶¶ 100-106.) The allegations are that Defendants COOS and ASMD were owned or controlled by the Song Defendants, operated the same

type of business with the same employees, and that everything used by SCEPS was transferred to them "without reasonably equivalent consideration and/or under circumstances demonstrating an intent to hinder, delay, or avoid [SCEPS'] liabilities." (Doc. 78 at 12, ¶¶ 102-105.) Plaintiff also claims that Defendants COOS and ASMD "received assets, revenues, business opportunities, and/or other benefits derived from [SCEPS] under circumstances giving rise to successor liability and equitable responsibility for the obligations at issue in this litigation." (Doc. 78 at 12, ¶ 106.)

Finally, Plaintiff contends that the Court may exercise pendant jurisdiction over Defendants COOS and ASMD based on their ties to Defendant SCEPS and the Song Defendants. (Doc. 88 at 8-9.) This is based on their "alleged participation in the fraudulent transfers." (Doc. 88 at 9.) Pendant jurisdiction is jurisdiction over related issues where the matters are "inextricably intertwined." *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1092 (9th Cir. 1998).

The Court understands that COOS and ASMD were added to this case based on information gleaned during discovery. In fact, Plaintiff provides additional factual information in their Response (Doc. 88 at 7) and refers to attached exhibits. The Court finds that there is insufficient factual information in the TAC itself concerning the acts and omissions of each of the respective Defendants to support the various theories listed above. Plaintiff needs to identify how these various entities are related, how and when funds were transferred or intermingled, what each Defendant did or did not do to hide those funds, what consideration was given, if any, for the transfer of assets from one Defendant to another, and the overall connection between the Defendants.

Accordingly, the Court grants the motion to dismiss for lack of jurisdiction filed by Defendants COOS and ASMD but grants Plaintiff leave to amend.

The Court will now consider the arguments made by Defendant SCEPS and the Song Defendants in their motion to dismiss. The Court will begin with the economic loss rule and the effect of the bankruptcy case.

**D. The Economic Loss Rule**

Defendants argue that the economic loss doctrine bars Plaintiff's tort claims (fraud, conversion; civil conspiracy; and aiding and abetting). (Doc. 83 at 14-16; Doc. 84 at 16-17.) "The economic loss doctrine bars a party from recovering economic damages in tort unless accompanied by physical harm, either in the form of personal injury or secondary property damage." *Ares Funding, L.L.C. v. MA Maricopa, L.L.C.*, 602 F.Supp.2d 1144, 1148 (D. Ariz. 2009) (citation modified). This rule was originally applied to products liability cases, *Salt River Project Agr. Imp. and Power Dist. v. Westinghouse Elec. Corp.*, 694 P.2d 198 (Ariz. 1984), and then later to construction defect cases. *Flagstaff Affordable Housing Ltd. P'ship v. Design All., Inc.*, 223 P.3d 664 (Ariz. 2010).

Arizona has taken a narrow approach to this doctrine. *Sullivan v. Pulte Home Corp.*, 306 P.3d 1, 2 (Ariz. 2013). "The primary function of the doctrine is to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to contractual remedies for loss of the benefit of the bargain." *Barrett-Jackson Auction Co., LLC v. Mountain Sports Int'l Inc.*, No. CV-20-00892-PHX-SRB, 2020 WL 9349176 at *3 (D. Ariz. Sept. 9, 2020) (citation modified). "Whether the doctrine applies depends on context-specific policy considerations underlying contract law and tort law, namely upholding the expectations of the parties on the one hand and accident deterrence and loss-spreading on the other." *Id.* (citation modified).

This litigation is based on Plaintiff claiming that Defendants reversed and concealed funds and assets that belonged to Plaintiff under the MSA. (Doc. 85 at 1-2). While those funds and assets are the subject of the parties' contract, Plaintiff alleges that Defendants acted outside of the contract in making fraudulent representations, reversing and diverting funds already paid to LivWell, fraudulently transferring assets beyond LivWell's reach, and converting LivWell's funds and property. (Doc. 85 at 13.) Even given Arizona's narrow approach to the economic loss doctrine, the Court finds that the economic loss doctrine is not a wholesale bar to Plaintiff's tort claims.

**E. The Impact of the Bankruptcy Case**

Defendants argue that Counts 2 (breach of the covenant of good faith and fair dealing), 3 (fraudulent transfer) and 8 (civil conspiracy) are preempted by the bankruptcy case. (Doc. 83 at 7-8; Doc. 84 at 15-16.) Plaintiff responds that it does not seek to relitigate what occurred in the bankruptcy case but included factual information about what happened there as evidence supporting its claims. (Doc. 85 at 14; Doc. 88 at 16.)

"[P]reemption does not merely protect exclusive federal jurisdiction to adjudicate the *propriety* of bankruptcy court filings. Rather, the Ninth Circuit extended the application of preemption to ensure that the *consequences* arising from improper bankruptcy court filings also are exclusively controlled by federal law as applied by federal courts." *In re Bral*, 622 B.R. 737, 744 (B.A.P. 9th Cir. 2020) (emphasis in original). Thus, "parties injured by wrongful bankruptcy court filings must look to the Bankruptcy Code and Rules for redress." *Id.* at 744.

In the TAC, Plaintiff alleges that Defendant SCEPS and the Song Defendants "filed the Bankruptcy Case primarily to delay, hinder, and/or avoid LivWell's prosecution of the claims asserted herein, rather than for any legitimate purpose under the Bankruptcy Code," and "[i]n the Bankruptcy Case, [SCEPS] failed to disclose or identify a certain bank account believed by LivWell to hold some or all of the improperly reversed payments previously taken by [SCEPS]. (Doc. 78 at 10, ¶¶ 86, 87.) Plaintiff also claims that it believes that "this undisclosed bank account contains, or contained, the funds wrongfully reversed by [SCEPS], and that Defendants intentionally concealed this asset from the bankruptcy court, creditors, and LivWell." (Doc. 78 at 10, ¶ 88.) Because these allegations are made in the general factual section of the Complaint, the Court will consider them background information only. The Court will now consider the allegations of the particular claims.

In Count 2, breach of the covenant of good faith and fair dealing, Plaintiff alleges that "Defendants engaged in wrongful reversals of payments owed to LivWell." (Doc. 78 at 14, ¶ 123.) This allegation is not a part of the bankruptcy case and is therefore not

preempted. Paragraph 124, however, alleges that in the bankruptcy case SCEPS "failed to disclose a bank account holding at least some, if not most, of the wrongfully reversed funds, and intentionally concealed assets, while using the bankruptcy filing solely to hinder, delay, or avoid this litigation." (Doc. 78 at 14, ¶124.) This portion of the claim for breach of the implied covenant of good faith and fair dealing is preempted by the bankruptcy case.

In Count 3, fraudulent transfer, Plaintiff claims among other allegations that the "transfers were concealed and omitted from the Bankruptcy Case filings." (Doc. 78 at 15, ¶ 135(b).) Count 3 is also based on the reversals and defines "badges of fraud" as transfers to insiders, occurring after LivWell threatened or initiated litigation, SCEPS then became insolvent and Defendants retained control of the transferred assets. (Doc. 78 at 15-15, ¶¶ 133, 135(a), (c), (d) and (e).) The portion of the fraudulent transfer claim based on concealment and omission from the bankruptcy case filings is preempted. The remainder of the claim is not.

In Count 8, civil conspiracy, Plaintiff alleges that the Defendants "participated in or furthered the conspiracy by overt acts, including but not limited to one or more of the following: (i) initiating and misusing the Bankruptcy Case to hinder and delay this litigation; (ii) concealing or diverting reversed funds and failing to disclose accounts holding those funds; (iii) retaining LivWell's medication and equipment; and (iv) accepting, concealing, or benefiting from the diverted assets." (Doc. 78 at 20, ¶ 177.) Again, the allegation of misusing the bankruptcy case is preempted. The remainder of the allegations are not.

As to counts 2, 3 and 8 of the TAC, the Court grants the motion to dismiss filed by Defendant SCEPS and the Song Defendants in part as to the allegations contained in the aforementioned counts based on the bankruptcy case. The reason why the bankruptcy case was filed and the alleged failure to disclose or concealment of assets in the bankruptcy case are matters that are preempted. The remainder of claims 2, 3 and 8 are not preempted.

**F. Breach of Contract**

The Song Defendants argue that because they were not signatories of the MSA, the

breach of contract claim should be dismissed against them. (Doc. 83 at 5-7.) Defendant SCEPS does not ask to dismiss Count 1. The basis for the allegations against the Song Defendants is Plaintiff's alter ego theory discussed above. Because the Court is granting Plaintiff leave to file an amended complaint relative to that theory, the Court will grant the motion to dismiss from the Song Defendants as to Count 1 but again will allow Plaintiff to amend.

**G. Fraud**

Defendant SCEPS and the Song Defendants argue that Counts 3 and 4 should be dismissed because they do not meet Rule 9(b)'s pleading requirements by not providing sufficient factual support for the allegations. (Doc. 83 at 9-12.)

As to Count 3, aside from the bankruptcy allegations, the Court notes that the Arizona Uniform Fraudulent Transfer Act ("AUFTA") is a transfer made with "actual intent to hinder, delay or defraud any creditor" or one made without "receiving a reasonably equivalent value in exchange." A.R.S. § 44-1004 (A)(1), (2). Plaintiff alleges that Defendants violated this statute under subsection 1 or 2 and further argues that the transfers were made to insiders, were concealed, occurred after litigation was threatened, or after Defendant SCEPS was insolvent or suffered substantial asset depletion, and that Defendants retained control of the transferred assets. (Doc. 78 at 15-16, ¶¶ 132-135.)

"[T]he definition of transfer under the AUFTA is broad . . . [and] clearly includes any transaction in which a property interest was relinquished." *Nikola Corp. v. Milton*, No. CV-24-00563-PHX-SHD, 2025 WL 2419955 at *4 (D. Ariz. Aug. 21, 2025). Indeed, these statutes are interpreted broadly "to protect property from being removed from the reach of creditors." *Id.* at *5. While "neither the Ninth Circuit nor the Arizona Supreme Court has decided whether Rule 9(b) applies to the AUFTA claim," *id.* at *6, the better practice would be to identify the claims for specific amounts owed, when and to whom the specific transfers were made, how they were concealed, when Defendant SCEPS became insolvent or lost substantial assets and who retained control of those assets.

As to Count 4, fraud must be plead with particularity. The TAC claims that the

Defendants made representations to Plaintiff that they had properly and fully paid for services rendered under the MSA when they intended to reverse approximately $700,000 of those payments, and because Plaintiff relied on those representations it was damaged. (Doc. 78 at 16-17, ¶¶ 138-145.) Plaintiff has not identified who exactly made the representation, what exactly the representation was, when it was made or how it was made. The Court will grant the motion to dismiss by Defendant SCEPS and the Song Defendants for Counts 3 and 4 but will grant Plaintiff leave to amend.

**H. Conversion of Equipment**

Plaintiff alleges that Defendant SCEPS converted the equipment that belonged to it by not returning it. (DOC. 78 at 17, ¶¶ 148-152.) Defendant SCEPS did not argue that Count 5 does not state a claim. (Doc. 83.) "Conversion is defined as an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 91 P.3d 362, 365, ¶ 11 (Ariz. App. 2004). Plaintiff alleges that Defendant SCEPS converted its medication and equipment by not returning it. This is sufficient for a claim of conversion.

**I. Conversion of Reversed Payments, Unjust Enrichment, Civil Conspiracy and Aiding and Abetting**

The Song Defendants argue that Count 6 (conversion of reversed payments), Count 7 (unjust enrichment), Count 8 (civil conspiracy) and Count 9 (aiding and abetting) should all be dismissed because they are based on conclusory allegations that do not identify which Defendants took what actions. (Doc. 83 at 14, 16-17.) This argument is made specifically for Defendant Dr. Alice Song as to Count 9. Defendant SCEPS makes this argument as to Counts 7 and 8. *Id.* The Court agrees that additional factual support is needed for these claims. The Court will grant the Song Defendants' motion to dismiss Counts 6-9, and Counts 7 and 8 as to Defendant SCEPS, but will grant Plaintiff leave to amend.

**IV. CONCLUSION**

Accordingly,

**IT IS ORDERED denying** Defendant SCEPS' and the Song Defendants' Motion

to Strike (Doc. 86).

**IT IS ORDERED granting** Defendants COOS and ASMD's motion to dismiss for lack of jurisdiction (Doc. 84). Plaintiff has leave to amend its Complaint.

**IT IS ORDERED granting** Defendant SCEPS and the Song Defendants' motion to dismiss for failure to state a claim (Doc. 83) **in part and denying in part** as follows.

**As to Defendant SCEPS**,

Counts 1, 5 and 6 shall go forward.

Count 2 will go forward with the exception of those allegations which are preempted as noted above.

Count 3 is dismissed but may be amended with the exception of those allegations which are preempted as noted above.

Counts 4, 7 and 8 are dismissed but may be amended.

Count 9 does not apply to this party.

**As to the Song Defendants**,

Count 1 is dismissed but may be amended.

Count 2 will go forward with the exception of those allegations preempted as noted above.

Count 3 is dismissed but may be amended with the exception of those allegations which are preempted as noted above.

Count 4 is dismissed but may be amended.

Count 5 does not apply to these Defendants.

Counts 6, 7 and 8 are dismissed but may be amended.

Count 9 only applies to Defendant Alice Song and is dismissed but may be amended.

**IT IS FURTHER ORDERED directing** Plaintiff to file its Fourth Amended Complaint within 30 days of the date of this order.

Dated this 13th day of November, 2026.

Honorable Susan M. Brnovich
United States District Judge